WRIGHT *et al. v.* SPARKS, administrator.

1. Testimony of a witness, taken by interrogatories, is not admissible in evidence unless it appears that the party suing out the commission gave to the opposite party or his counsel, in the manner prescribed by law, notice of the intention to take the testimony of such witness, or such notice is waived. When a party to a case dies and his legal representative has not been made a party, notice of the intention to sue out the commission to take the testimony of a witness, served upon counsel who represented the deceased party in his lifetime, will not be sufficient to authorize the answers to the interrogatories to be read in evidence upon the trial of the case, after the legal representative

has been made a party. The notice required by law must be given to the person who is a party at the time that the commission was sued out, or to the counsel representing him as a party in the case.

2. Even if there was evidence authorizing a finding in favor of the plaintiffs, it was not of such a character as to demand a finding in their favor. The discretion of the trial judge, exercised in refusing to set aside a verdict in favor of the defendant, will not be interfered with.

*Submitted July 18, 1906.—Decided January 17, 1907.*

Complaint for land. Before Judge Lewis. Putnam superior court. November 10, 1905.

J. A. Wright and two others brought their action against W. H. Sparks, alleging that they were tenants in common of a described parcel of land, of which the defendant was in possession, and that the yearly profits thereof were of a stated value, and that the defendant refused to surrender possession of the land to the plaintiffs, or to pay them the profits thereof. An abstract of title was attached to the petition, which was, in substance, as follows: (1) Will of Thomas Head, who died in possession of the land in controversy, executed in 1844, and admitted to record in 1848; (2) division of land devised by said will, among the three children of the testator, named in the will, in which division the land sued for was assigned to the mother of plaintiffs during her natural life; (3) death of the mother of plaintiffs on February 1, 1899. The plaintiffs amended the petition by making the description of the land sued for more definite and precise. The answer of the defendant denied the title claimed by the plaintiffs, and set up title in himself. The defendant having died, his executrix was made a party in his stead, and she filed an amended answer, in which she alleges that her testator was in possession of 906 acres of land at the date of his death, which is still in the possession of defendant, and that if the land sued for is not embraced within said 906 acres, defendant disclaims title thereto, but does claim title to all which may be embraced in said 906 acres. The answer then alleges that the testator of the defendant was a bona fide purchaser, and erected valuable improvements, etc. The trial resulted in a general verdict in favor of the defendant, and the plaintiffs except to a judgment refusing to grant a new trial.

*Joseph S. Turner,* for plaintiffs.

*J. D. Sparks* and *W. B. Wingfield,* for defendant.

COBB, P. J.   (After stating the facts.)

1. The plaintiffs offered the testimony of a witness, taken by interrogatories, and the defendant objected to the answers being read as evidence, for the reason that, at the time the interrogatories were sued out and returned into court the original defendant was dead, and his legal representative had not been made a party in his stead, and there was no party defendant to the case.   One of the counsel for the plaintiffs stated in his place that Mr. J. D. Sparks and Messrs. Wingfield represented the defendant before his death, and represented his executrix at the time the interrogatories were sued out; that Mr. Sparks is one of the legatees under the will of the defendant; that the witness whose testimony was sought was old and feeble, and, realizing the delay that would be incident to a formal proceeding to perpetuate his testimony, he went to Judge Wingfield and stated that he would be glad if they would cross the interrogatories and let them be executed, in the place of perpetuating the testimony in the usual way; that Judge Wingfield replied that he had no right to consent to anything, but that he would refer the matter to Mr. Sparks; that he, plaintiffs' counsel, sent a copy of the interrogatories by mail to Mr. Sparks, and they were returned with a voluminous cross-examination, signed J. D. Sparks and Wingfield & Wingfield, defendants' counsel; and that, relying on this, plaintiffs' counsel had the interrogatories taken.   The witness is now dead.   Mr. Sparks stated in his place: "There has been no implied agreement, so far as I understand it." Judge Wingfield stated, in substance, that his recollection was that he wrote Mr. Sparks that there was a set of interrogatories filed by counsel for plaintiff, and that Mr. Sparks replied that he did not see how they could sue them out, but that he was going to cross them anyhow.

Before answers to interrogatories can be read in evidence, it must appear that notice has been given to all parties to the case having an interest adverse to the party suing them out, or to their counsel, or that such notice has been waived, either by the parties or their counsel.   Civil Code, § 5299.   The reason for this rule is manifest. It gives the opposite party an opportunity to cross-examine the witness, if he desires to do so.   When Sparks, the original defendant, died, the case was without a party defendant, until his legal representative was duly made a party in his stead.   The counsel

who represented Sparks in his lifetime had no authority to represent his estate, unless they were re-employed by the legal representative. As the executrix had not been made a party at the time that notice was given to the counsel who represented the testator in his lifetime, there was no notice given to a party in the case, for the simple reason that there was at that time no party defendant. The mere fact that Mr. Sparks, counsel for the defendant in his lifetime and counsel for the executrix at the time the interrogatories were sued out, filed cross questions for the witness would not authorize the answers to be read in evidence, for the reason that at that time he did not represent a party to the case. He may have represented the executrix under a general retainer, but the executrix was not at that time a party. Counsel for the plaintiffs relies upon the case of Ryan *v*. The People, 21 Colo. 119. In that case the counsel who appeared and cross-examined the witness at the time and place fixed for taking depositions was the authorized counsel of a party to the case, and it was held that his appearance and participation in the examination was a waiver of certain irregularities in the issuance and service of the notice. If there had been an express agreement made by the executrix, or her counsel, that the answers to the interrogatories might be taken, before the executrix had been made a party, and might be thereafter used, the court would no doubt have enforced such an agreement; but an express agreement is not relied on. Counsel for plaintiffs rather relies upon estoppel by conduct; for the facts were not sufficient to have justified the court in holding that the executrix was estopped from asserting that at the time the interrogatories were filed there was no party defendant to the cause, and therefore they could not lawfully be sued out except by express waiver and consent.

2. Thomas Head was, during his lifetime, the owner of numerous tracts of land in Putnam county. He died in possession of several of them. His will provided that his widow should have 550 acres of land, to be selected by her, which was to be held during her natural life, and, at her death, to be divided among his children. In one item of his will he gave to his daughter, Artemesia, who was the mother of the plaintiffs, certain slaves, which were to be held by a named trustee in trust for the daughter, not subject to the debts of her husband, to be used and employed, under the authority and power of the trustee, as he might think best to pro-

mote the object of the trust, allowing the daughter to have and use the same for the support of herself and children, should she have any, during her lifetime, and, at her death, to be equally divided among her children.   Similar trusts were created in slaves for the benefit of the other two daughters.   In a subsequent item of the will he gives all of his land, not given to his wife, to be equally divided among his children, to be held in trust as the other property given them is to be held.   The effect of this was to create the same trust in the land as was created in the slaves.   While there is some controversy as to the character of the trust estate created for the life-tenant, there is no dispute that the remainder to the children was a legal remainder, and that it was a vested remainder. In the view we take of the case, it is not necessary to consider the question as to what was the power and authority of the trustee during the continuance of the life-estate.   The plaintiffs claim title under the will of Thomas Head.   It is therefore absolutely necessary that they should establish that the land sued for was owned by Thomas Head at the time of his death.   While the evidence is not clear and altogether satisfactory on this question, still there was evidence from which the jury could probably find that Thomas Head died in possession of the land in controversy.   But this would not make out a prima facie case in favor of the plaintiffs.   The burden upon them was to establish, in addition to this, the fact that the land in controversy was not embraced in the 550 acres which had been selected by the widow under the will.   While their parent had no interest as remainderman even in this land, which would pass to them as heirs of their parent, in the event that their parent died seized, still the present suit is not under this item of the will. The plaintiffs sued for the land embraced under that item of the will which devised all other land than that which the widow might select.   The evidence upon this point is not clear and satisfactory. But still, there is some evidence which would authorize a finding in favor of the plaintiffs that the land in controversy was not embraced in the 550 acres selected by the widow.   We are not prepared to say that the evidence demanded a finding in favor of the plaintiffs upon either of the above points; neither are we prepared to say that a finding in favor of the plaintiffs on each of these issues would be entirely unsupported by the evidence.

But it is said that even if this be true, there is no evidence that

the executrix of Thomas Head ever assented to the legacy. There is evidence that the three life-tenants were in possession of different portions of the land formerly belonging to their father, and there is also evidence that the trustee named in the will died, and that another trustee was appointed, the successor to the trustee being the surviving executrix under the will. It must be kept in mind that we are now dealing with transactions which occurred more than a half century ago. Many of those who were acquainted with the facts have passed away, and the recollection of these transactions resides now in the minds of those who are far advanced in years and whose memory would be indistinct and feeble at best. From the lapse of time and from the fact that the life-tenants were in possession of at least some of the land embraced under the devise to them, we think that after the lapse of fifty years it would be safe to presume that the possession was the result of an assent on the part of the executrix, who was afterwards appointed their trustee,. under the will. The plaintiffs claim the right to recover the entire land sued for upon the ground that there had been a division of the land between the three life-tenants and the land in controversy was assigned to their mother as her portion. We do not think the evidence is sufficient to establish the division. But even if it were, this division would not be conclusive upon any person except the life-tenants themselves and those claiming under them. The plaintiffs do not claim under the life-tenants. They claim under Thomas Head. The defendant and those under whom the defendant claims have been in possession for more than forty years, and the plaintiffs can not recover possession upon the basis of a division in which their mother participated, who was only a life-tenant under the will of her father. There is nothing in the evidence to connect the defendant with the division alleged to have been made between the three life-tenants. The defendant stands upon possession, and the plaintiffs must recover upon proof of a title in themselves. Upon the death of their mother, in 1899, they became entitled to the possession of whatever land passed under the devise in the will creating the life-estate in their mother, with remainder to them. That is all they could recover, and no more. The plaintiffs' right to recover is therefore limited. In our view they would be entitled to the recovery of an undivided one-third interest in the land sued for, in the event their grandfather died

in possession of the same and it was not embraced in the 550 acres selected by the widow.

The charges complained of are alleged to be erroneous for the reason that they preclude the plaintiffs from recovering more than one third of the land in controversy even though there had been a ratification by the remaindermen of the division made by the life-tenants before the land had passed out of the possession of the life-tenants. In the view we have taken of the matter, the alleged division by the life-tenants, even if it has been established, was not material in a controversy between the remaindermen under the will and one who did not claim under the division between the life-tenants, but under the estate of Thomas Head, as indicated by the testimony of the witness Mattox. Hence there was no such error in the charge as would authorize a reversal of the judgment. After a most anxious and laborious consideration of the voluminous brief of evidence in this case we are not prepared to say that the evidence demanded a finding in favor of the plaintiffs for the recovery of even a one-third undivided interest in the land; and such being the case, we will not interfere with the discretion of the trial judge in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent, and Evans, J., disqualified.*